Michael GRASSMUECK, Plaintiff,

v.

OGDEN MURPHY WALLACE, P.L.L.C.,
et al., Defendants.

No. C02–1403P.

United States District Court,
W.D. Washington,
at Seattle.

March 4, 2003.

Bruce E.H. Johnson, Davis Wright Tremaine, LLP, Seattle, WA, William R. Harmsen, Allen, Matkins, Leck, Gamble & Mallory, LLP, Los Angeles, CA, for plaintiff.

David F. Taylor, Perkins Coie, LLP, Seattle, WA, for Ogden Murphy Wallace, P.L.L.C.

Mathew R. Kenney, Danielson, Harrigan & Tollefson, LLP, Seattle, WA, for James L. Vandenberg.

David H. Binney, Preston, Gates & Ellis, LLP, Seattle, WA, for John J. O'Donnell, individually and as John J. O'Donnell P.C.

Robert Sulkin, McNaul, Ebel, Nawrot, Helgren & Vance, P.L.L.C., Seattle, WA, for Franklin L. Dennis.

## ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

PECHMAN, District Judge.

This matter comes before the Court on plaintiff's motion to compel production of documents and to resolve certain claims of privilege asserted by the defendant. (Dkt. No. 29) A nearly identical motion has been brought by the United States in the parallel criminal action, *U.S. v. Kevin Lawrence,* Case No. CR02–260P (W.D.Wash.). This order mirrors the order filed in that case as the documents at issue are the same in both cases.

Kevin Lawrence was charged by way of indictment on 64 separate counts including mail fraud, wire fraud, securities fraud, money laundering, and conspiracy to commit these offenses. Plaintiff in this case is the Court-appointed Receiver, acting on behalf of the corporate entities alleged to have taken part in the alleged crimes through their agents. Both before and after the indictment, the Government in the criminal action has sought and collected a vast quantity of documentary evidence through the use of warrants, Grand Jury subpoenas and various cooperating sources, both private and governmental. By the parallel motion, the Government seeks production of two boxes of documents culled from over ninety (90) boxes by the Receiver. The Receiver likewise seeks to use those same documents in his action against the law firm that represented Mr. Lawrence and the various corporations. Mr. Lawrence now objects to production of documents that he claims are covered by attorney-client privilege and/or the work product doctrine.

Unlike the pending Government motion involving two boxes of documents, the Receiver appears to be asking for production of (or permission to use/release) over ninety (90) boxes still in dispute. Defendant in this case, the law firm of Ogden Murphy Wallace, P.L.L.C. ("OMW"), does not contest production of the documents. In fact, OMW supports production so that it may use the documents in its defense against the suit. OMW does point out, however, that a small subset of the documents should be considered privileged as to Mr. Lawrence personally, and should only be produced if the Court finds that the crime-fraud exception to the attorney-client privilege applies.

The Receiver moves this Court for an order declaring that "Kevin Lawrence does not hold nor possess any privilege in or to any documents or communications with OMW between October 6, 2000, and appointment of the Receiver relating to the business or affairs of HMC and/or any related entities." Mot. at 4. The Court finds this request problematic, as it asks the Court to make findings concerning documents without the aid of a privilege log. The requested order is also conclusory, essentially asking the Court to declare that Mr. Lawrence cannot claim privilege over documents for which he has no privilege. Rather than ruling in the abstract, the Court hereby makes findings and conclusions about the concrete evidence before it, and resolves the issues presented in the motions in as much as they relate to the privilege logs submitted to the Court, namely the November 21 log and the December 2 log described in the criminal action. The log submitted by OMW appears to be nearly identical to the December 2 log. *See* Knapp Decl. Ex. B. ("the Knapp log") The Court is hopeful that by resolving the privilege claims as to those documents, many of the outstanding issues concerning the remaining boxes of documents may also be resolved without further Court action.

Having reviewed the papers and pleadings submitted by the parties, the Court hereby GRANTS IN PART the motion to compel. Specifically, the Receiver is hereby allowed to use and/or release all documents listed on the November 21 log. Defendant is also directed to submit the documents on the Knapp log to the Court for *in camera* review so that the Court may determine whether the documents should be produced pursuant to the "crime-fraud" exception to the attorney-client privilege.

## BACKGROUND

The procedural background to this case is set forth in the Government's motion in the parallel criminal action, and is largely undis-

puted. Kevin Lawrence was indicted on a wide variety of charges alleging that he orchestrated a massive scheme to defraud securities investors out of tens of millions of dollars. The Government alleges that Mr. Lawrence carried out this scheme as the principal officer of various corporate entities, including Health Maintenance Centers ("HMC"), Znetix, Inc., and Cascade Pointe LLC. On October 6, 2000, the State of Washington Department of Financial Institutions, Securities Division, served a subpoena on Mr. Lawrence in both his personal and corporate capacities, seeking information related to its administrative investigation of HMC. Once the subpoena was served, Mr. Lawrence hired the law firm of Ogden Murphy Wallace P.L.L.C. ("OMW") to represent him in his corporate capacity as an officer of HMC and "Kevin Lawrence Inc.," and arguably in his personal capacity. *See* Lawrence's Opp. Br. Ex 1. In the instant action, OMW affirmatively states that it did in fact represent Mr. Lawrence as an individual on some matters. Resp. at 2.

On April 23, 2001, Mr. Lawrence appears to have hired Stanbery Foster to represent him personally in estate planning and divorce-related matters. On May 9, 2001, it appears that OMW withdrew from its representation of Mr. Lawrence in his personal capacity. Resp. at 2. OMW continued to represent HMC until at least December 26, 2001, when HMC became a Delaware corporation wholly-owned by Znetix, and possibly until February 15, 2002.

On February 15, 2002, this Court issued a preliminary injunction and appointed Michael Grassmueck as the receiver for HMC, Znetix, Cascade Pointe, and related entities. At that time the Receiver assumed control over all the affairs of those entities. Shortly thereafter, the Receiver requested and obtained nearly all of the documents related to OMW's representation of HMC, a total of approximately ninety-two boxes. The Receiver later produced to the Government one box of documents collected from the ninety-two boxes received from OMW. In doing so, the Receiver has taken the position that there has been a complete waiver of the attorney-client privilege and work product

protection as to communications between HMC and OMW. Coopersmith Decl. Ex. 4. The Receiver also brought the present action against OMW alleging negligence and breach of fiduciary duty and seeking disgorgement of attorney's fees.

Once the Government began reviewing the documents, however, it realized that many of the documents were communications between Mr. Lawrence and attorneys at OMW. Although it appeared in each that Mr. Lawrence was acting in his corporate capacity, the Government halted the review process in order to allow this Court to resolve any claims of privilege Mr. Lawrence might wish to assert. Mr. Lawrence originally asserted privilege covering all of the documents, but later released a subset to the Government. A log of the documents contained in the box produced to the Government has been created to assist in the assessment of the privilege claims; this has been termed the "November 21" log.

OMW itself withheld forty-one documents on the ground that they constituted work product and/or privileged communications between attorneys at OMW and Lawrence in his individual capacity relating to Mr. Lawrence's estate planning and divorce proceedings. A log of these documents has been created; this has been termed the "December 2" log, which is very similar to the Knapp log filed by OMW.

The Receiver by his motion argues that all of the documents must be produced and/or be made available for him to use in the present lawsuit for essentially the same reasons argued by the Government in the criminal action. First, the Receiver argues that the vast bulk of the documents on the November 21 log represent communications between OMW and Mr. Lawrence in his corporate capacity, and that the corporate entities (now controlled by the Receiver) have waived any claim to privilege. Second, the Receiver argues that essentially all of the documents on both logs should be produced pursuant to the "crime-fraud" exception to attorney-client privilege. The Receiver alleges that Mr. Lawrence used OMW's legal advice to perpetuate a fraud.

Mr. Lawrence claims that he was represented by OMW in both his personal and corporate capacities, and that the attorney-client privilege covers the all of the documents on both logs. He also argues that the crime-fraud exception is not as broad as the Government and the Receiver assert.

## ANALYSIS

■■■ Documents may be withheld from production on grounds that they are protected by either the attorney-client privilege or the work-product doctrine. The party asserting the attorney-client privilege as a defense to production bears the burden of proving that the privilege applies. Generally speaking, then, Mr. Lawrence must show that each of the following elements is met: 1) when legal advice of any kind is sought 2) from a professional legal adviser in his or her capacity as such, 3) the communications relating to that purpose, 4) made in confidence 5) by the client, 6) are, at the client's instance permanently protected 7) from disclosure by the client or by the legal adviser 8) unless the protection be waived.

*United States v. Martin*, 278 F.3d 988, 999 (9th Cir.2002). The work product doctrine protects materials prepared in anticipation of litigation, which may only be produced upon a showing of "substantial need" and unavailability. "In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed.R.Civ.P. 26(b).

The Court analyzes each of the arguments of the parties in turn.

### A. *Privilege in the Context of Personal and Corporate Representation*

All parties in both actions agree that the appropriate analysis of whether Mr. Lawrence can claim attorney-client privilege over documents constituting communications between himself and OMW is outlined in *In re Grand Jury Subpoena*, 274 F.3d 563, 571 (1st Cir.2001). Adopting the five-part test of *In re Bevill, Bresler & Schulman Asset Mgmt.*

*Corp.*, 805 F.2d 120, 123 (3d Cir.1986), the court stated that a person who was represented both in their personal and corporate capacities may personally assert the attorney-client privilege over a document only upon a showing of the following elements:

First, they must show they approached [counsel] for the purpose of seeking legal advice. Second, they must demonstrate that when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. Third, they must demonstrate that the [counsel] saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that their conversations with [counsel] were confidential. And fifth, they must show that the substance of their conversation with [counsel] did not concern matters within the company or the general affairs of the company.

*In re Grand Jury Subpoena*, 274 F.3d at 571. The court went on to hold that a client represented both as an individual and as an agent of a corporation "may only assert an individual privilege to the extent that communications regarding individual acts and liabilities are segregable from discussions about the corporations." *Id.* at 573.

■■■ The Court notes from the outset that there can be no assertion of attorney-client privilege if there is no attorney-client relationship. Lawrence does not dispute the allegation that OMW's representation of him in his personal capacity ended in May of 2001. While OMW states that the personal attorney-client relationship ended on May 9, 2001, the Court uses the May 18, 2001, date alleged in the Government's brief and the Receiver's complaint. Because there was no longer an attorney-client relationship between Mr. Lawrence personally and OMW, any documents generated after this date can only relate to the attorney-client relationship between HMC and OMW. Privilege over such documents has been waived by the Receiver, and must be produced and/or made available. This includes document numbers 064, 076, 077, 081, 087, 088, 104, 105, 106, 113,

123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, and 135 from the November 21 log.

■ Next, the Court addresses the five-part *Bevill* test. While the Court notes that Lawrence has made only conclusory statements asserting compliance with the first four parts of the test, the Court focuses on the fifth part, as it is dispositive regarding all remaining documents on the November 21 log. Defendant makes no showing that any of the documents on the November 21 log represent communications between OMW and Mr. Lawrence in his personal capacity that are segregable from issues relating to the corporate entities. In fact, nearly all of the entries in the November 21 log contain names of the various corporate entities, indicating that they more properly should be categorized as corporate documents. Because the attorney-client privilege has been waived by the Receiver on behalf of each of the corporate entities, and because Mr. Lawrence has not met his burden of showing that any of the entries in the November 21 log are segregable from the general affairs of those entities, all of documents on that log must be produced.

■ Because all documents on the November 21 log are deemed "corporate," and because defendant made no showing otherwise, the Court finds it unnecessary to reach the issue of waiver by disclosure to third parties of a few of the documents. To the extent that defendant argues that the work product doctrine prohibits disclosure of the documents, the Court disagrees. As stated above, all of the documents on the November 21 log relate to the corporate affairs and are not segregable from representation of Mr. Lawrence as an individual. Thus, the protection of the work product doctrine belongs to the corporate entities, and can be waived by them. As the Receiver has waived any claim to work product protection, the documents must be produced.

Finally, defendants raise an important argument that weighs heavily in favor of disclosure, namely that they will require disclosure of the documents in order to defend themselves against the pending lawsuit. Specifically, defendants argue that regardless of whether Lawrence may defeat HMC's waiver of the privilege, most documents in OMW's possession are reasonably necessary to its defense.

The Washington Rules of Professional Conduct ("RPC") allow an attorney to disclose otherwise confidential information if the lawyer reasonably believes that the information is necessary to defend against claims stemming from its representation of a client. RPC 1.6(b)(2). *See e.g., In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig.,* 120 F.R.D. 687 (C.D.Cal. 1988) (holding that law firm may disclose confidential communications to show lack of scienter in securities fraud under identical rule); *see also First Fed. Sav. & Loan Assoc. of Pittsburgh v. Oppenheim, Appel, Dixon & Co.,* 110 F.R.D. 557 (S.D.N.Y.1986).

■ In the present case, the claims of the receiver and the grand jury investigation provide ample grounds for OMW to invoke this self defense exception. This provides a separate and independent ground for disclosure of relevant documents that are the subject of this motion. Should OMW determine that documents otherwise withheld from production are "reasonably necessary" to its defense, it may disclose them. This applies to documents on any of the privilege logs.

### B. The "Crime–Fraud" Exception to the Attorney–Client Privilege

■ One of the more important exceptions to the attorney-client privilege is the "crime-fraud" exception. In order to compel production of otherwise privileged documents using this exception, the government "has the burden of making a *prima facie* showing that the communications were in furtherance of an intended or present illegality ... and that there is some relationship between the communications and the illegality." *In re Grand Jury Proceedings (The Corporation),* 87 F.3d 377, 380 (9th Cir.1996). The showing must be "sufficient to establish a reasonable belief that *in camera* review *may lead to evidence* that the exception applies; we do not require a *prima facie* showing that the exception *does* apply." *In re Grand Jury Subpoena 92–1(SJ),* 31 F.3d 826, 830 (9th Cir.1994) (emphasis in original). Furthermore, the crime-fraud exception may apply

"even though the attorney is unaware of the crime and takes no affirmative step that actually furthers it." *Id.* at 379.

Once the government makes a *prima facie* showing, the court decides whether to engage in *in camera* review. *United States v. Zolin,* 491 U.S. 554, 572, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). This decision is based on "the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply." *Id.* A finding based on these factors must be made by the district court before the materials are submitted to the court. *United States v. Chen,* 99 F.3d 1495, 1503 (9th Cir. 1996).

The Government sets forth in great detail the factual allegations against Mr. Lawrence in the parallel criminal action. The defendant does not seriously contest the fact that a *prima facie* showing has been made that is sufficient to establish that *in camera* review may lead to evidence that the crime-fraud exception applies. Rather, defendant argues that the Court should engage in *in camera* review of the documents to determine whether the exception applies. The Court finds that the Government has made a *prima facie* showing that Mr. Lawrence used OMW's legal advice to further the alleged fraudulent activities. This extends to Mr. Lawrence's divorce and estate planning, because the Government has made a sufficient showing that Mr. Lawrence's only source of money flowed from his allegedly fraudulent activities. Under this theory, the divorce and estate planning become part of the fraud, presumably since those proceedings may be used to hide the stolen funds.

Under *Zolin,* this Court finds that *in camera* review of the documents on the December 2 log is appropriate. First, at least for purposes of this motion, the volume of documents to be reviewed is small. Second, the importance of the documents is high in that they may tend to show where the money went. Third, the Court finds that there is a sufficient likelihood that *in camera*

review of the documents together with other available evidence will show that the crime-fraud exception applies.

Although at least one circuit has allowed district courts to order production of documents absent *in camera* review if the court is convinced that the crime-fraud exception applies, *In re Grand Jury Subpoenas,* 144 F.3d 653, 661 (10th Cir.1998), the Ninth Circuit has not expressly gone so far. Therefore, the Court finds that the most prudent course of action is to have the documents listed on the December 2 and Knapp logs submitted to the Court for *in camera* review.

## CONCLUSION

In conclusion, the Court finds that all documents on the November 21 log are discoverable because those documents relate to corporate affairs and are not segregable from the personal affairs of the defendant, and/or were generated after the attorney-client relationship between Mr. Lawrence personally and OMW was terminated. Any documents reasonably necessary to the OMW's defense against the current lawsuit may also be released. Finally, the Court directs that the documents listed on the December 2 and Knapp logs be submitted to the Court for *in camera* review no later than April 1, 2003.