**In re XL SPECIALTY INSURANCE COMPANY and Cambridge Integrated Services Group, Inc., Relators.**

No. 10–0960.

Supreme Court of Texas.

Argued Nov. 10, 2011.

Decided June 29, 2012.

**48**

David L. Brenner, Belinda May Arambula, Burns Anderson Jury & Brenner LLP, Austin, TX, for XL Specialty Insurance Company.

Michael P. Doyle, Jeffrey L. Raizner, Patrick Mason Dennis, Doyle Raizner LLP, Alan B. Daughtry, Attorney–at–Law, Houston, TX, for Real Party in Interest Jerome Wagner.

David L. Brenner, Burns Anderson Jury & Brenner LLP, Austin, TX, for Other Interested Party Melissa Martinez.

Chief Justice JEFFERSON delivered the opinion of the Court, in which Justice HECHT, Justice WAINWRIGHT, Justice MEDINA, Justice GREEN, Justice JOHNSON, Justice GUZMAN, and Justice LEHRMANN joined.

We must decide whether, in a bad faith action brought by an injured employee against a workers' compensation insurer, the attorney-client privilege protects communications between the insurer's lawyer and the employer during the underlying administrative proceedings. We hold that the privilege does not apply.

## I. Background

XL Specialty Insurance Company is Cintas Corporation's workers' compensation insurer. XL's policy included standard provisions requiring Cintas to cooperate in the investigation, settlement, and defense of a claim. The policy also provided for a one million dollar deductible per claim.

Jerome Wagner, a Cintas employee, sought workers' compensation benefits for a work-related injury. Melissa Martinez, a claims adjuster with XL's third party administrator, Cambridge Integrated Services Group, Inc., denied the claim. In a contested case hearing before the Division of Workers' Compensation, the hearing officer determined that Wagner sustained a compensable injury and was entitled to medical and temporary income benefits. During the course of the administrative litigation, XL's outside counsel, Rebecca Strandwitz of Flahive, Ogden & Latson, P.C., sent communications about the status and the evaluation of the proceedings to Cambridge and Cintas.

After the workers' compensation dispute was resolved, Wagner sued XL, Cambridge, and Martinez for breach of the common law duty of good faith and fair dealing and violations of the Insurance Code and Texas Deceptive Trade Practices Act. During discovery, Wagner sought the communications made between Strandwitz and the insured, Cintas, during the administrative proceedings. XL and Cam-

bridge argued that the attorney-client privilege protected those communications. After an in-camera inspection, the trial court held that the privilege did not apply.

XL and Cambridge sought mandamus relief from the court of appeals, which denied the petition. 368 S.W.3d 549, 550. They then petitioned this Court for a writ of mandamus, arguing that the attorney-client privilege protects the communications.

## II. Attorney–Client Privilege in Multi–Party Litigation

■■■ Confidential communications between client and counsel made to facilitate legal services are generally insulated from disclosure. *See* TEX.R. EVID. 503(b); *Huie v. DeShazo*, 922 S.W.2d 920, 922 (Tex. 1996). Recognized as "the oldest of the privileges for confidential communications known to the common law," *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (citation omitted), the attorney-client privilege promotes free discourse between attorney and client, which advances the effective administration of justice. *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 160 (Tex.1993). But a strict rule of confidentiality may also suppress relevant evidence. *Id.* For that reason, "[c]ourts balance this conflict between the desire for openness and the need for confidentiality in attorney-client relations by restricting the scope of the

attorney-client privilege." *Id.* The privilege belongs to the client and must be invoked on its behalf. *West v. Solito*, 563 S.W.2d 240, 244 n. 2 (Tex.1978).

Texas evidentiary rules define the privilege as follows:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:

(A) between the client or a representative of the client and the client's lawyer or a representative of the lawyer;

(B) between the lawyer and the lawyer's representative;

(C) by the client or a representative of the client, or the client's lawyer or a representative of the lawyer, to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein;

(D) between representatives of the client or between the client and a representative of the client; or

(E) among lawyers and their representatives representing the same client.

TEX.R. EVID. 503(b).[1]

Rule 503(b) protects not only confidential communications between the lawyer

---

1. Although many of our evidentiary rules mirror their federal counterparts, *see, e.g.,* FED. R.EVID. 801; TEX.R. EVID. 801, there is no federal analogue to our Rule 503. In 1972, the Chief Justice of the United States proposed to Congress the Rules of Evidence for United States Courts and Magistrates. 56 F.R.D. 183 (1972). The Proposed Rules were drafted by the Judicial Conference Advisory Committee on the Rules of Evidence and approved by the Judicial Conference of the United States and the Supreme Court. *Jaffee v. Redmond*, 518 U.S. 1, 8 n. 7, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). The Proposed Rules

defined nine specific testimonial privileges, including the lawyer-client privilege, which was contained in Proposed Rule 503. *See* PROPOSED FED.R.EVID. 503, *reprinted in* 56 F.R.D. 183, 235–40 (1972). Congress rejected Proposed Rule 503 in favor of Federal Rule of Evidence 501's general mandate that "the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience," although "in civil actions and proceedings, with respect to an element of a

and client, but also the discourse among their representatives. It is an exception to the general principle that the privilege is waived if the lawyer or client voluntarily discloses privileged communications to a third party. *See* TEX.R. EVID. 511(1).

XL[2] relies primarily on the privilege defined in Rule 503(b)(1)(C)—which has been variously described as the "joint client" privilege, the "joint defense" privilege, and the "common interest" privilege. Courts sometimes use these terms interchangeably, but they involve distinct doctrines that serve different purposes. As we explain below, however, none of them accurately describes the privilege at issue in this case.

### A. Joint Client Privilege

■ The joint client or co-client doctrine applies "[w]hen the same attorney simultaneously represents two or more clients on the same matter." PAUL R. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 4:30 (2011). Joint representation is permitted when all clients consent and there is no substantial risk that the lawyer's representation of one client would be materially and adversely affected by the lawyer's duties to the other. 2 RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 128 (2000). "Where [an] attorney acts as counsel for two parties, communications made to the attorney for the purpose of facilitating the rendition of legal services

to the clients are privileged, except in a controversy between the clients." *In re JDN Real Estate—McKinney L.P.*, 211 S.W.3d 907, 922 (Tex.App.-Dallas 2006, pet. denied); *see also* TEX.R. EVID. 503(d)(5) (noting that communications made by two or more clients to a lawyer retained in common are not privileged "when offered in an action between or among any of the clients").

### B. Joint Defense and Common Interest Doctrines

Representations involving multiple clients with separate counsel call for the application of what have been called the joint defense and common interest doctrines. Courts and parties often confuse the relevant nomenclature. *See In re Teleglobe Commc'n Corp.*, 493 F.3d 345, 363 n. 18 (3d Cir.2007) ("[M]uch of the caselaw confuses the community-of-interest privilege (which is the same as the 'common-interest privilege' ...) with the co-client privilege.") (citation omitted).[3] Unlike the joint client rule, the joint defense and common interest rules apply when there has been sharing of information between or among *separately represented* parties. *See* 1 RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 75 cmt. c ("Co-client representations must also be distinguished from situations in which a lawyer represents a single client, but another person

---

claim or defense as to which State law supplies the rule of decision, the privilege of a witness ... shall be determined in accordance with State law." FED.R.EVID. 501 (1975) (amended 2011). "Although Congress did not adopt this rule, courts have relied upon [Proposed Rule 503] as an accurate definition of the federal common law of attorney-client privilege...." *United States v. Spector*, 793 F.2d 932, 938 (8th Cir.1986).

**2.** For ease of reference, we refer to relators XL and Cambridge as "XL." Their legal arguments are identical, and our conclusion

that the privilege does not apply here disposes of both of their claims.

**3.** *See also* 24 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5493 (1986) ("Federal courts continue to confuse the allied lawyer doctrine, which applies when parties with separate lawyers consult together, and the joint-client doctrine, which applies when two clients share the same lawyer, by using the phrase 'joint defense privilege' to mangle the two concepts.").

with allied interests cooperates with the client and the client's lawyer....").

The joint defense rule applies when multiple parties to a lawsuit, each represented by different attorneys, communicate among themselves for the purpose of forming a common defense strategy. *In re JDN*, 211 S.W.3d at 923. Unlike the common interest doctrine, the joint defense doctrine applies only in the context of litigation. VINCENT S. WALKOWIAK, THE ATTORNEY-CLIENT PRIVILEGE IN CIVIL LITIGATION 18 (4th ed.2008).

The common interest rule (also known as the "community of interest," "pooled interests," or "allied lawyer" doctrine) is more expansive than the joint defense doctrine.[4] The parties must share a mutual interest, but unlike the joint defense doctrine, the common interest rule applies to "two or more separately represented persons whatever their denomination in pleadings and whether or not involved in litigation." 1 RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 76 reporter's note

cmt. b; *see also* RICE § 4:35, 474–75 ("The 'community of interest' rule is distinguished from the 'joint defense' rule by the fact that the collaboration between the parties need not be related to a pending legal action."). Thus, plaintiffs and nonlitigating persons with common interests can assert this exception to the waiver rule. 1 RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 76 reporter's note cmt. b (noting that common interest is the preferable term because it includes "both claiming as well as defending parties and nonlitigating as well as litigating persons").[5]

## III. Texas Rule of Evidence 503(b)(1)(C)—The Allied Litigant Doctrine

Courts of appeals have generally applied Rule 503(b)(1)(C) to joint defense situations where multiple defendants, represented by separate counsel, work together in a common defense.[6] Notably, and in contrast to the proposed federal rule,[7] Texas requires that the communications be

4. Thus, the common interest doctrine is different from the joint client doctrine for the very same reason as the joint defense doctrine: unlike the joint client situation, in the common interest arrangement, each client has her own lawyer—they are not jointly represented by one lawyer. 2 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 5:20 (3d ed.2007); *see also* 1 RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 76 cmt. a (2000) (noting that the common interest rule "differs from the co-client rule of [privilege] in that the clients are represented by separate lawyers").

5. *See also, e.g., In re Grand Jury Subpoena*, 274 F.3d 563, 572 (1st Cir.2001) ("Because the privilege sometimes may apply outside the context of actual litigation, what the parties call a 'joint defense' privilege is more aptly termed the 'common interest' rule.").

6. *See, e.g., In re JDN Real Estate—McKinney L.P.*, 211 S.W.3d 907, 922 (Tex.App.-Dallas 2006, orig. proceeding [mand. denied]) ("[R]ule 503(b)(1)(C) ... address[es] the joint-defense privilege, which applies when multi-

ple parties to a lawsuit represented by different attorneys communicate among themselves."); *In re Dalco*, 186 S.W.3d 660, 666 (Tex.App.-Beaumont 2006, orig. proceeding [mand. denied]) ("... [T]he 'joint defense privilege,' found in TEX.R. EVID. 503(b)(1)(C)[,] ... [w]hen applicable ... 'cloaks communications with confidentiality where "a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel."'" (quoting *United States v. Gotti*, 771 F.Supp. 535, 545 (E.D.N.Y.1991))).

7. *See* PROPOSED FED.R.EVID. 503(b)(3), *reprinted in* 56 F.R.D. 183, 236 (1972) (protecting communications between a client "to a lawyer representing another in a matter of common interest"); *see also, e.g., In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir.2001) (noting that the common interest privilege applies to both communications between co-defendants in actual litigation and their counsel as well as to "communications between *potential* co-defendants and their counsel" (emphasis in original)); *United States v. Schwimmer*, 892 F.2d 237, 243–44 (2d Cir.1989) ("'The need

made in the context of a pending action.[8] *See* TEX.R. EVID. 503(b)(1)(C) (protecting from disclosure communications between a client "to a lawyer ... representing another party in a *pending action* and concerning a matter of common interest therein") (emphasis added).[9] Although criticized,[10] the pending action requirement limits the privilege "to situations where the benefit and the necessity are at their highest, and ... restrict[s] the opportunity for misuse." *United States v. Duke Energy Corp.*, 214 F.R.D. 383, 388 (M.D.N.C.2003). Thus, in jurisdictions like Texas, which have a pending action requirement, no commonality of interest exists absent actual litigation. Accordingly, our privilege is not a "common interest" privilege that extends beyond litigation. Nor is it a "joint defense" privilege, as it applies not just to defendants but to any parties to a pending action. Rule 503(b)(1)(C)'s privilege is more appropriately termed an "allied litigant" privilege.[11]

■ The allied litigant doctrine protects communications made between a client, or

---

to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter,' ... and it is therefore unnecessary that there be actual litigation in progress for the common interest rule of the attorney-client privilege to apply...." (citations omitted)).

8. A number of other states' evidentiary rules also require communications to be made in the context of pending litigation in order for the doctrine to apply. *See, e.g.,* HAW. R. EVID. 503(b) (protecting communications made "by the client ... to a lawyer ... representing another party in a pending action and concerning a matter of common interest"); ME. R. EVID. 502(b)(same); MISS. R. EVID. 502(b)(same); N.H. R. EVID. 502(b) (same); OKLA. STAT. tit. 12 § 2502(B)(3) (same); S.D. CODIFIED LAWS § 19–13–3 (same). In addition, Uniform Rule of Evidence 502(b)(3) also includes a "pending action" requirement. UNIF. R. EVID. 502(b)(3).

9. *See also In re Dalco,* 186 S.W.3d at 666–67 ("Rule 503(b)(1)(C) appears to attach the common interest 'privilege' to confidential communications disclosed in the course of legal services rendered during some *'pending action'* and *'concerning a matter of common interest therein.'* ... Here, ... this contractual relinquishment of Citibank's confidential or proprietary information to Universal did not occur during any 'pending action' and therefore could not concern 'a matter of common interest therein.'" (emphasis in original) (citations omitted)).

10. *See* Katharine Traylor Schaffzin, *An Uncertain Privilege: Why the Common Interest Doc-*

*trine Does Not Work and How Uniformity Can Fix It,* 15 B.U. PUB. INT. L.J. 49, 77–78 (2005) (noting that the pending action requirement is redundant of other safeguards and harmful because it fails to protect communications shared between those with a common legal interest unrelated to litigation).

11. A leading federal law treatise suggests that the appropriate moniker is the "allied lawyer doctrine." 24 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5493 (1986). Other sources refer to a "joint litigant" exception. *See, e.g.,* James M. Fischer, *The Attorney–Client Privilege Meets the Common Interest Arrangement: Protecting Confidences While Exchanging Information for Mutual Gain,* 16 REV. LITIG. 631, 633–34 (1997); *see also Libbey Glass, Inc. v. Oneida, Ltd.,* 197 F.R.D. 342, 347 (N.D.Ohio 1999) ("Where several parties, though represented by separate counsel, are on the same side of a legal dispute and share information for their mutual benefit in that dispute, the *'joint litigant'* privilege protects 'attorney-client privileged matters when they are shared with co-parties, even though those parties are represented by separate counsel.'") (emphasis added) (citation omitted); *In re Sandwich Islands Distilling Corp.,* No. 07–01029, 2009 WL 3055199, at *2 (Bankr.D.Haw. Sept. 21, 2009) ("Under Hawaii law, contrary to federal common law, the joint litigant common interest privilege is limited to co-parties and their counsel in pending litigation."). Because the Texas rule has both a pending action and a common interest requirement, however, the "allied litigant" doctrine more accurately describes our law.

the client's lawyer, to another party's lawyer, not to the other party itself. *See, e.g., Robert Bosch, LLC v. Pylon Mfg. Corp.,* 263 F.R.D. 142, 146 (D.Del.2009) ("[T]o qualify for and to maintain continued protection [under the common interest privilege], the communication must be shared between counsel."); WALKOWIAK, at 18 (noting that the joint defense doctrine "does not apply to ... communications [made directly to] other parties themselves").[12] This attorney-sharing requirement makes clear that the privilege applies only when the parties have separate counsel. *See, e.g., In re Teleglobe,* 493 F.3d at 365 ("[T]he [common interest] privilege only applies when clients are represented by separate counsel."); *Griffith v. Davis,* 161 F.R.D. 687, 692 (C.D.Cal.1995) ("The [joint defense] doctrine applies where parties are represented by separate counsel but engage in a common legal enterprise.").

## IV. XL has failed to show that the communications between Strandwitz and Cintas are privileged.

■ XL argues that the communications between Strandwitz and Cintas are protected by the attorney-client privilege, and more generally, the insurer—insured

relationship. We have not recognized a general insurer-insured privilege.[13] Nevertheless, we agree that, under certain circumstances, communications between an insurer and its insured may be shielded from discovery by the attorney-client privilege. That appears to be the majority rule. *See, e.g.,* 17A LEE R. RUSS ET AL., COUCH ON INSURANCE § 250:19 (3d ed.2005) (noting that majority view is that the attorney-client privilege applies to communications between an insured and its liability insurer when they concern a potential suit and communications are predominantly intended to be transmitted to the attorney hired by insurer to defend insured). But for us to reach that conclusion here, XL must show that its lawyer's communications are among those protected by Rule 503,[14] and it has not done so.

### A. Rule 503(b)(1)(C)'s allied litigant doctrine is inapplicable.

■ Here, XL is the client, and the communications were between XL's lawyer and a third party, Cintas, who was not represented by XL's lawyer (or any other lawyer) and was not a party to the litigation or any other related pending action. We recognize that Cintas, having contract-

---

**12.** *See also In re Teleglobe Commc'ns Corp.,* 493 F.3d 345, 364–65 (3d Cir.2007) ("[T]o be eligible for continued protection, the communication must be shared with the *attorney* of the member of the community of interest.... The attorney-sharing requirement helps prevent abuse by ensuring that the common-interest privilege only supplants the disclosure rule when attorneys, not clients, decide to share information in order to coordinate legal strategies." (citation omitted)); *United States v. Schwimmer,* 892 F.2d 237, 243 (2d Cir.1989) ("[The joint defense privilege] serves to protect the confidentiality of communications passing from *one party to the attorney for another party* where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.") (emphasis added).

**13.** *See, e.g., In re Ford Motor Co.,* 988 S.W.2d 714, 719 (Tex.1998) (declining to extend the attorney-client privilege to communications between an insured and liability insurer where "at the time [the insured] made her statements, there was no attorney-client relationship" between her and her insurer); *see also In re Tex. Farmers Ins. Exch.,* 990 S.W.2d 337, 341 (Tex.App.-Texarkana 1999, pet. denied) (holding that if counsel retained by an insurer acts as an "investigator," and not as an attorney, then the communications between the insured and insurer are not privileged).

**14.** Our evidentiary rules have the force and effect of statutes and should be construed accordingly. *See In re City of Georgetown,* 53 S.W.3d 328, 332 (Tex.2001).

ed for a substantial deductible, may have shared a joint interest with XL during the administrative proceedings in the outcome of the claim. But no matter how common XL's and Cintas's interests might have been, our rule requires that the communication be made to a *lawyer or her representative* representing another party in a *pending action.* Tex.R. Evid. 503(b)(1)(C) (protecting certain communications "by ... the client's lawyer ... to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein"). Those requirements were not met here.

Part of XL's difficulty in proving a privilege stems from the fact that, in Texas, workers' compensation claims are brought directly against a workers' compensation carrier, with limited involvement of the employer in the adjudication of the rights to benefits. The insurer, not the employer, is directly responsible for paying benefits. *See* Tex. Lab.Code § 406.031(a) (making the insurance carrier and not the employer directly "liable for compensation for an employee's injury without regard to fault or negligence").[15] Thus, the insurer, not the insured, is the client and party to the pending action, and it retains counsel on its own behalf. In contrast, in a lawsuit involving a standard liability insurance policy, only the insured is a party to the case, and the insurer typically retains counsel on its insured's behalf.[16] Often, as outlined below, those communications fall within one of Rule 503(b)'s subsections. But in a case in which the communications were not made to the insured's lawyer, and the insured is not a party to a pending action, as required by the rule, the allied litigant privilege does not apply.

## B. XL and Cintas were not joint clients.

▆▆▆▆▆ For similar reasons, the joint client rule of privilege is inapplicable. XL, and XL alone, was Strandwitz's client. XL does not argue, nor is there any evidence, that Strandwitz also represented Cintas. We do not exclude the possibility that an insured and insurer may have a common lawyer in the workers' compensation context. "[W]e have never held that

---

**15.** Under the insurance policy, XL is primarily responsible for the payment of benefits as well as legal fees that arise out of any claim or suit it defends, while Cintas reimburses it for such expenses:

> In consideration of a reduced premium, you have agreed to reimburse us up to the deductible amounts stated in the Schedule at the end of this endorsement for all payments legally required, including Allocated Loss Adjustment Expense(s), where you have elected to include such expense as indicated in the Schedule, which arises out of any claim or suit we defend.
> We will remain responsible for the full payment of all claims under this policy without regard to your ability or intention to reimburse us for the deductible amount, provided that this does not release you from your obligation to reimburse us.

**16.** *See, e.g., Raymond v. N.C. Police Benevolent Ass'n, Inc.,* 365 N.C. 94, 721 S.E.2d 923, 926 (2011) ("The most common scenario involving a tripartite attorney-client relationship occurs when an insurance company employs counsel to defend its insured against a claim.... In the insurance context, courts find that the attorney defending the insured and receiving payment from the insurance company represents both the insured and the insurer, providing joint representation to both clients.... Under these circumstances, notwithstanding that usually only the insured has been sued, a tripartite attorney-client relationship exists because the interests of both the insured and the insurer in prevailing against the plaintiff's claim are closely aligned." (citations omitted)); *see also Metroflight, Inc. v. Argonaut Ins. Co.,* 403 F.Supp. 1195, 1197 (N.D.Tex.1975) ("Liability insurance policies ... commonly obligate the insurer to defend actions against the insured within the policy coverage.").

an insurance defense lawyer *cannot* represent both the insurer and the insured, only that the lawyer *must* represent the insured and protect his interests from compromise by the insurer." *Unauthorized Practice of Law Comm. v. Am. Home Assurance Co.*, 261 S.W.3d 24, 42 (Tex.2008) (emphasis in original); *see also id.* (noting that "[w]hether defense counsel also represents the insurer is a matter of contract between them"); TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.06 (allowing a lawyer to represent more than one client in a matter if not precluded by conflicts between them), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G, app. A. We recognize that Texas law assumes that workers' compensation insurers and employers will converse about workers' compensation claims. *See* TEX. LAB.CODE § 415.002(b) (providing that an insurance carrier does not commit an administrative violation by allowing an employer to freely discuss a claim, assist in the investigation and evaluation of a claim, or attend and participate in a division proceeding); TEX. ADMIN. CODE § 65.10 (same). But before those communications are privileged, parties must show that the communications come within the ambit of Rule 503, and XL has failed to make such a showing here.

■ Nor do we rule out the possibility that an insurer can be a representative of the insured under Rule 503, making some of its communications privileged. *See Unauthorized Practice of Law*, 261 S.W.3d at 43 (noting that " 'an insurer's right of control generally includes the authority to make defense decisions *as if it were the client* "where no conflict of interest exists" ' " (emphasis in original) (citation omitted)); *see also* TEX.R. EVID. 503(a)(2), 503(b)(1)(A), (C), (D). But XL has neither pleaded nor proved that this is the case.

Both sides argue forcefully that sound policy favors their position. Whether recognizing a privilege here is good policy is another matter; we conclude only that the communications here are not within the allied litigant or joint client privileges.

**C. The communications are not privileged under subsections (A), (B), (D), or (E).**

■ XL also argues that the communications are privileged under Rule 503(b)(1)(A), which protects communications "between the client or a representative of the client and the client's lawyer or a representative of the lawyer." TEX.R. EVID. 503(b)(1)(A). According to XL, the insurer and insured are "representatives" of each other. Texas Rule of Evidence 503(a)(2) defines "representative of the client" as:

(A) a person having authority to obtain professional legal services, or to act on advice thereby rendered, on behalf of the client, or

(B) any other person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in the scope of employment for the client.

TEX.R. EVID. 503(a)(2).

Cintas could not have been a "representative of the client," as it did not have the authority to obtain legal services for its insurer, XL. For the same reason, Cintas could not act, on XL's behalf, on any advice "thereby rendered"—that is, rendered as a result of it having obtained counsel for XL. XL does not contend, nor is there any proof, that Strandwitz represented both XL and Cintas, so Cintas does not qualify as a "client," either. Thus, neither subsections (A) nor (D) protects the communications. *See* TEX.R. EVID. 503(b)(1)(D) (shielding communications "between representatives of the client or between the client and a representative of

the client"). XL does not contend that any other provision applies. Subsection B, which involves communications between the lawyer and the lawyer's representative, is inapposite,[17] as is subsection E, which pertains to multiple lawyers representing the same client.[18]

### D. XL's affidavit does not support a privilege for communications to Cintas.

▮ To support its privilege claim, XL submitted the claims adjuster's affidavit. Martinez stated that Cambridge retained Strandwitz on XL's behalf and that Strandwitz would:

> [P]rovide communication to *Cambridge* relating to their professional services, their opinions associated with those professional services and also provide information necessary to the proper rendition of those services.... [T]he records are not disclosed to anyone who is not an employee of *Cambridge, XL* or in furtherance of the provision of the professional legal services.

(emphasis added). This affidavit speaks only to communications between XL's law firm and its clients, not to communications between XL's law firm and the employer Cintas. Furthermore, the affidavit does not purport to establish any privilege extending to the communications between Strandwitz and Cintas. The trial court

noted this and ordered production of only those documents.[19] We conclude that the trial court acted within its discretion.

### V. Conclusion

The attorney-client privilege shields otherwise relevant information from discovery. As a result, we construe it narrowly[20] to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). While XL asserts that the attorney-client privilege protects communications between an insurer and its insured, it has not brought the relevant communications within Rule 503's parameters. Because the documents are not protected from discovery under the allied litigant doctrine or any other part of Rule 503, we deny relief. TEX. R.APP. P. 52.8(a).

Justice WILLETT delivered a dissenting opinion.

Justice WILLETT, dissenting.

Just seven days ago, this Court held that a common-law "bad faith" claim (and certain statutory claims) are inconsistent with the Legislature's hermetic workers' compensation regime.[1] Today the Court

---

17. *See* TEX.R. EVID. 503(a)(4) (defining "representative of the lawyer" as either a lawyer's employee or an accountant).

18. *See id.* R. 503(b)(1)(E) (protecting communications "among lawyers and their representatives representing the same client").

19. After reviewing the documents in camera, the trial court stated that it had determined some were not privileged "mainly because they are communications with a Kelli Green who is the representative for Cintas, which I believe was the employer." The court continued: "And they do not appear to be documents as described by Ms. Martinez in the

affidavit ... I think there is no evidence to support that communications with Ms. Green from Cintas are privileged, and so I'm going to order those produced but only those produced."

20. *See Hyman v. Grant,* 102 Tex. 50, 112 S.W. 1042, 1044 (1908) ("As the rule of privilege has a tendency to prevent the full disclosure of the truth, it should be limited to cases which are strictly within the principle of the policy that gave it birth.").

1. *Tex. Mut. Ins. Co. v. Ruttiger,* —— S.W.3d ——, 2012 WL 2361697 (Tex.2012).

answers a vexing question of attorney-client privilege—a question I concede is important (after all, we granted the petition)—but the question, albeit weighty, arises possibly from a claim that no longer exists.

I say "arises possibly" because it's impossible to tell really, as the *mandamus* record before the Court is not the *full* record. So we really have no idea if Jerome Wagner has any viable claim(s) remaining post-*Ruttiger*—for example, an Insurance Code claim for misrepresenting the comp policy.[2]

Today's decision is undeniably instructive and finely reasoned. But I respectfully take issue with issuing something on a non-issue. Rather than venture what may be a purely advisory opinion springing from a now-defunct lawsuit, I would instead simply have the parties advise the Court on whether Wagner has any actionable claims remaining.

Since 1793, when Chief Justice Jay declined President Washington's request for advice on twenty-nine questions regarding America's duties under various treaties, the bar on advisory opinions has become firmly embedded in American law.[3] Two hundred and nineteen years later, and lacking ample assurance that any live controversy exists here, I respectfully dissent.

---

**2.** *See* TEX. INS. CODE § 541.061.

**3.** *See* RICHARD H. FALLON, JR. ET AL., HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 50–52 (6th ed.2009); *see also Valley Baptist Med. Ctr. v. Gonzalez,* 33 S.W.3d 821,

822 (Tex.2000) (per curiam) ("Under article II, section 1 of the Texas Constitution, courts have no jurisdiction to issue advisory opinions.").