# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00362-CV

The Franklin Center for Government and Public Integrity and Jon Cassidy, Appellants

v.

The University of Texas System, Appellee

---

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-15-003417, THE HONORABLE TIM SULAK, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

The Franklin Center for Government and Public Integrity and Jon Cassidy (collectively, the Franklin Center) appeal the district court's summary judgment in favor of The University of Texas System (the UT System) ordering that information requested by the Franklin Center related to an independent investigation into the UT System's admissions policies was excepted from disclosure under the Texas Public Information Act (TPIA). *See* Tex. Gov't Code §§ 552.001-.353. We reverse the district court's summary judgment and render judgment that some of the requested documents are not excepted from disclosure under the TPIA.

## BACKGROUND

In August 2013, a member of the UT System Board of Regents and members of the media raised questions about the possible existence of undue influence in the admissions process at The University of Texas at Austin (UT Austin). The UT System Chancellor and

the Executive Vice Chancellor for Academic Affairs tasked the Vice Chancellor and General Counsel, Daniel Sharphorn, and the Associate Vice Chancellor for Student Affairs, Wanda Mercer, with investigating whether there did exist undue influence or outside pressure in the UT Austin admissions process. The investigation initially focused on the University of Texas School of Law (UT Law School), but later expanded to include undergraduate admissions.

Sharphorn and Mercer interviewed the UT Austin President, his Chief of Staff, the current and former Deans of UT Law School, the Assistant Dean for Admissions and Financial Aid of UT Law School, and other individuals affiliated with UT Law School. They also reviewed undergraduate and law school admissions data, seventy-seven letters of recommendation sent by members of the state legislature to then-President Bill Powers, and Powers's responses to those letters. In May 2014, at the conclusion of the investigation, Sharphorn and Mercer finalized the "University of Texas System—U.T. Austin Admissions Inquiry Report" (the Inquiry Report). The Inquiry Report, which was released to the public, noted that the investigation focused on letters of recommendation "that are sent directly to the president or a dean and are outside the prescribed application and recommendation process." The investigation found no evidence of a "quid pro quo[,] an exchange of admissions decisions for favors"; no evidence "of a systematic, structured, or centralized process of reviewing and admitting applicants recommended by influential individuals"; and no evidence of overt pressure on Admissions Office staff to admit applicants based on the recommendations of persons of influence. The Inquiry Report did, however, conclude that admission decisions were likely impacted in some cases by the letters of recommendation and that the admission rates for applicants to whom the letters applied were significantly higher than for the rest of the applicant populations. The Inquiry Report further concluded that the disparities in admission rates could

2

not reasonably be explained by factors of individual merit, such as grades, test scores, or other holistic considerations. The Inquiry Report determined that further investigation was unwarranted because "little would be gained by refining the data and attempting to identify explanatory variables that would produce a more precise estimate of the impact of legislator letters of recommendation." Instead, the Inquiry Report recommended that "the Chancellor and Executive Vice Chancellor for Academic Affairs work with institution presidents to ensure that all U.T. System institutions have incorporated the best practices in admissions processes that have been developed within the U.T. System and across the country." The Inquiry Report concluded that if the Board of Regents believed that there were questions that should and could be answered by a full investigation, then the Board of Regents should, after full and careful deliberation, make the decision about whether to conduct such an investigation.

In June 2014, after the Inquiry Report was issued, a former Admissions official reported to the UT System Chancellor and its Vice Chancellor and General Counsel that the UT Austin Office of the President had at times exerted pressure on the UT Austin Office of Admissions to admit some applicants of lesser qualifications in response to external influences. That same month, the UT Austin President informed the UT System Chancellor that he had faced pressure over the admissions process from donors, alumni, and legislators and that, in certain cases, he had responded to that pressure by increasing the class size by the added number of people he chose to admit so that positions were not taken away from applicants already admitted. This new information caused the Chancellor to believe that an independent firm should be retained to more thoroughly and comprehensively review the admissions process.

In August 2014, the UT System and Kroll Associates, Inc. (Kroll) entered into an "Agreement Between University and Contractor" (the Agreement) whereby Kroll, identified in

the Agreement as the "Contractor," would act as the independent firm to review the admissions process. The Agreement defined the Scope of Work as follows:

> The focus will be on an evaluation of the conduct of U.T. Austin, U.T. System, and U.T. System Board of Regents, (collectively "U.T.") officials and employees in performing admissions services, not on any external recommenders. U.T.'s responsibility to ensure integrity in the handling of admissions recommendations lies with the staff and officials within U.T., thus the charge is to determine if the conduct of U.T. officials is beyond reproach. Specifically, the investigation should determine if U.T. Austin's admissions decisions are made for any reason other than an applicant's individual merit as measured by academic achievement and officially established personal holistic attributes, and if not, why not.

> This charge is based on the premise that applicants should only be admitted to a public university based on their individual merit, i.e., academic achievement and officially established personal holistic factors. They should not gain advantage only because they are recommended outside the prescribed admissions process by an influential individual, whether that individual is a regent, U.T. System or U.T. Austin officer or staff member, member of the executive, legislative or judicial branch, or major donor, who adds no new substantive information about the applicant's personal merit. Any competing evidence or premise as to the basis for admissions should be identified so it can be openly debated.

The Agreement included a section defining the "Relationship of the Parties," which provided:

> For all purposes of this Agreement and notwithstanding any provision of this Agreement to the contrary, Contractor is an independent contractor and is not a state employee, partner, joint venturer, or agent of University. Contractor will not bind or attempt to bind University to any agreement or contract. As an independent contractor, Contractor is solely responsible for all taxes, withholdings, and other statutory or contractual obligations of any sort, including workers' compensation insurance.

The Agreement also required Kroll to submit a final report to the "U.T. Austin General Counsel" that "describes the investigation methods employed and reports the investigators' factual findings."

Kroll conducted its investigation, during the course of which it reviewed data and documents provided to it by the UT System and conducted interviews of various individuals

4

involved in the admissions process. The UT System explained in its brief that Kroll was provided "approximately 626,000 pages" of documents and that "the large volume was due to the way some of the documents were stored." Specifically, the UT System stated that several university employees and departments were on litigation hold status due to unrelated litigation and that the litigation hold was implemented "in a way that made it difficult to extract the correspondence Kroll requested, so the entire litigation hold file was provided instead." In its report, Kroll stated that it reviewed approximately 9,500 emails provided to it. After completing the investigation, Kroll submitted its Final Report in February 2015. The 101-page report detailed Kroll's findings, provided its recommendations, and suggested best practices. Specifically, Kroll's report states that while it "has not attempted to second-guess the merits of individual admissions decisions," it "found a lack of guidance for decision makers" and, in the report, "attempt[ed] to offer some suggested guidelines for future consideration and possible implementation." Kroll submitted its report to the UT System's General Counsel and the report was published on the UT System's website.

After Kroll's report was published, the Franklin Center made a request under the TPIA for "all emails, interview transcripts and other documents provided to or obtained by Kroll investigators as part of their audit of admissions." The UT System requested an opinion from the Open Records Division of the Attorney General's office regarding whether the documents sought were required to be disclosed to the Franklin Center. In an informal letter opinion designated OR2015-14088, the Attorney General ruled that the information was part of a completed investigation subject to TPIA section 552.022(a)(1). *See* Tex. Gov't Code § 552.022(a)(1) (completed investigation made of, by, or for governmental body not excepted from disclosure unless made confidential under other law). However, because the Texas Supreme Court has held

5

that the Texas Rules of Evidence are "other law" for the purposes of section 552.022, the Attorney General addressed the UT System's assertion that the documents sought were protected by the attorney-client privilege under Texas Rule of Evidence 503. *See* Tex. R. Evid. 503 (lawyer-client privilege); *In re City of Georgetown*, 53 S.W.3d 328, 336 (Tex. 2001) (orig. proceeding) (Texas Rules of Evidence are "other law" within meaning of section 552.022). The Attorney General also considered the UT System's claims that the information requested was protected by common law and constitutional privacy, and other TPIA provisions. *See* Tex. Gov't Code §§ 552.101 (information considered to be confidential by law, either constitutional, statutory, or by judicial decision); .103 (litigation exception); .111 (deliberative process privilege). The Attorney General concluded that, with certain exceptions, the documents were excepted from disclosure to the Franklin Center.

The UT System then sued the Attorney General in Travis County district court challenging the portions of the Attorney General's letter ruling that ordered certain documents to be disclosed. *See id.* § 552.324 (governmental body may seek declaratory relief from compliance with decision by attorney general). The Franklin Center intervened in the suit seeking a declaratory judgment that all the documents were public information not excepted from disclosure and a writ of mandamus to compel the UT System to release the information. *See id.* §§ 552.321, .3215. While the litigation was pending, the UT System created a privilege log of documents that it had submitted to the Attorney General as a representative sample of the documents subject to the Franklin Center's TPIA request and asserted that all documents on the privilege log were protected by the attorney-client privilege.[1] The Franklin Center then filed an

---

[1] Section 552.301(e)(1)(D) of the Texas Government Code permits a governmental body seeking an Attorney General decision about whether requested information is excepted from

6

amended petition that narrowed the scope of documents it sought under the TPIA. Specifically, the Franklin Center's amended petition states that it "seeks only that information provided to the OAG as a representative sample identified by UT in its privilege log." Because the scope of the documents sought was thereby narrowed, the majority of the documents containing the exceptions for disclosure that were the subject of the UT System's original petition against the Attorney General were no longer the subject of the Franklin Center's TPIA request and, consequently, the UT System's challenges to the Attorney General's ruling on that information were no longer at issue.

The documents identified on the privilege log that are the subject of this appeal were all either provided to Kroll by the UT System or created by Kroll in connection with its investigation.[2] The UT System groups the documents identified in the privilege log in three categories. First, documents labeled UTS-00001 through UTS-00146 consist of internal communications between UT System lawyers and UT System clients, UT Austin lawyers and UT Austin clients, and UT System and UT Austin clients and lawyers regarding matters unrelated to the Kroll investigation. Second, documents labeled UTS-00147 through UTS-00722 and UTS-00727 through UTS-00734 include interview questions and notes and summaries created by Kroll during Kroll's interviews of UT System and UT Austin employees and officials. Third, documents labeled UTS-0723 through UTS-0726 include draft correspondence from UT

disclosure under the TPIA to submit representative samples of the information if a voluminous amount of information was requested. Tex. Gov't Code § 552.301(e)(1)(D). The UT System had submitted a representative sample to the Attorney General.

[2] The documents identified in the privilege log were submitted to the trial court for in camera inspection. *See id.* § 552.3221 (information at issue may be filed with court for in camera inspection, and on receipt of information court shall enter order that prevents release to or access by any person other than court, reviewing court of appeals, or parties permitted to inspect information pursuant to protective order).

System General Counsel Daniel Sharphorn to UT employees about Kroll's interviews and drafts of other investigation-related documents as edited by Sharphorn.

The UT System and the Franklin Center filed cross-motions for summary judgment regarding whether the information identified in the privilege log was excepted from disclosure because it was, in its entirety, protected from disclosure by Texas Rule of Evidence 503 as "confidential communications made for the purpose of facilitating the rendition of legal services to the client . . . between the client or a representative of the client and the client's lawyer or a representative of the lawyer" or "between the client's lawyer and the lawyer's representative." Tex. R. Evid. 503(b)(1). The parties also joined issue on whether, aside from the attorney-client privilege, certain of the requested information constitutes confidential student and applicant information excepted from disclosure as well as personal contact information also excepted from disclosure. *See* Tex. Gov't Code §§ 552.101 (information considered to be confidential by law or judicial decision excepted from disclosure); .114 (excepting from disclosure information in "student record," as term is defined by Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g(a)(4), at educational institution funded by state revenue); .117 (information that relates to home address, home telephone number, emergency contact information, or social security number of current or former official of governmental body excepted from disclosure); .137 (e-mail address of member of public provided for purpose of communication electronically with governmental body is confidential and not subject to disclosure). Finally, the UT System argued that one email described in the privilege log contained information that was confidential under Texas Health and Safety Code section 81.046. *See* Tex. Health & Safety Code § 81.046 (information related to cases of disease or health conditions is not public information under Government Code chapter 522).

After a hearing, the trial court rendered judgment granting the UT System's motion for summary judgment and denying the Franklin Center's. The Franklin Center perfected an appeal challenging that judgment.

## DISCUSSION

### *Attorney-Client Privilege*

Relevant to the circumstances here, the TPIA provides that a completed investigation made by or for a governmental body is public information and not excepted from disclosure unless it is expressly confidential under other law. Tex. Gov't Code § 552.022. The Texas Rules of Evidence are "other law" for the purposes of TPIA section 552.022. *See In re City of Georgetown*, 53 S.W.3d at 329. Texas Rule of Evidence 503(b)(1) protects:

> confidential communications made to facilitate the rendition of professional legal services to the client: (A) between the client or the client's representative and the client's lawyer or the lawyer's representative; (B) between the client's lawyer and the lawyer's representative; (C) by the client, the client's representative, the client's lawyer, or the lawyer's representative to a lawyer representing another party in a pending action or that lawyer's representative, if the communications concern a matter of common interest in the pending action; (D) between the client's representatives or between the client and the client's representative; or (E) among lawyers and their representatives representing the same client.

Tex. R. Evid. 503(b)(1). An attorney's investigation may constitute legal services such that it falls within the attorney-client privilege. *See Harlandale Indep. Sch. Dist. v. Cornyn*, 25 S.W.3d 328, 334 (Tex. App.—Austin 2000 pet. denied). The relevant inquiry is whether the attorney was retained to conduct an investigation related to the rendition of legal services. *Id.* Further, the attorney-client privilege protects not only the communications between the lawyer and the client, but also communications between their representatives. *Id.*; *In re XL Specialty Ins.*, 373 S.W.3d 46, 49-50 (Tex. 2012) (orig. proceeding). A "lawyer's representative" is "one employed by the

9

lawyer to assist in the rendition of professional legal services." Tex. R. Evid. 503(a)(4)(A); *In re XL Specialty Ins.*, 373 S.W.3d at 56 & n.17 (explaining that rule 503(a)(4) defines "lawyer's representative" as employee of lawyer or accountant); *IMC Fertilizer, Inc. v. O'Neill*, 846 S.W.2d 590, 592 (Tex. App.—Houston [14th Dist.] 1993, no writ) (discussing rule 503(b) and concluding that investigator was representative of attorney covered by attorney-client privilege).

Whether information is subject to the TPIA and whether an exception to disclosure applies to the information at issue are questions of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000); *Arlington Indep. Sch. Dist. v. Texas Att'y Gen.*, 37 S.W.3d 152, 163 (Tex. App.—Austin 2001, no pet.). It is the governmental body's burden to prove that an exception to public disclosure applies to the information at issue, *City of Fort Worth v. Cornyn*, 86 S.W.3d 320, 323 (Tex. App.—Austin 2002, no pet.), and exceptions to disclosure are narrowly construed, *Texas State Board of Chiropractic Examiners v. Abbott*, 391 S.W.3d 343, 347 (Tex. App.—Austin 2013, no pet.). Thus, the UT System had the burden to establish that the documents at issue were privileged under Rule 503. *See Huie v. DeShazo*, 922 S.W.2d 920, 926 (Tex. 1996).

The Franklin Center first argues that the UT System failed to carry its burden of demonstrating that the documents listed on the privilege log are, in their entirety, protected by the attorney-client privilege.[3] In its summary judgment motion, the UT System argued that each

---

[3] The parties do not dispute the facts relevant to the determination of whether the information fell within the attorney client-privilege. *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000) ("Because the parties do not dispute the relevant facts, this is a proper case for summary judgment"); *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 674 (Tex. 1995) ("A & T's request does not raise factual issues about the nature of the information sought."); *University of Tex. Sys. v. Paxton*, No. 03-14-00801-CV, 2017 WL 1315374 (Tex. App.—Austin Apr. 7, 2017, no pet.) (mem. op.); *City of Houston v. Paxton*, No. 03-15-00093-CV, 2016 WL 767755, at *3 (Tex. App.—Austin Feb. 23, 2016, no pet.) (mem. op.).

document identified on the log constituted a "communication, created to facilitate the rendition of professional legal services." Documents labeled UTS-00001 through UTS-00146 are emails containing internal communications between UT System lawyers and UT System clients, UT Austin lawyers and UT Austin clients, and between UT System and UT Austin clients and lawyers regarding matters unrelated to the Kroll investigation. These internal communications, which the UT System maintains were privileged attorney-client communications, were provided to Kroll by the UT System. The Franklin Center argued that this voluntary disclosure of the attorney-client communications to Kroll waived any attorney-client privilege that would otherwise protect those communications from disclosure. *See* Tex. R. Evid. 511(a) (waiver by voluntary disclosure); *Paxton v. City of Dallas*, 509 S.W.3d 247, 262-64 (Tex. 2017) (discussing waiver of attorney-client privilege in context of TPIA). "It is an exception to the general rule that the [attorney-client] privilege is waived if the lawyer or client voluntarily disclose privileged communications to a third party." *XL Specialty Ins.*, 373 S.W.3d at 50. The UT System countered that its voluntary disclosure of the communications to Kroll did not waive the attorney-client privilege because Kroll was not a "third party" but a "lawyer's representative" within the meaning of Rule 503(a)(4).

The UT System describes documents labeled UTS-00147 through UTS-00722 and UTS-00727 through UTS-00734 as interview questions and notes created by Kroll during Kroll's interviews of UT System and UT Austin employees and officials. The UT System argues that these documents are privileged attorney-client communications because they constitute communications made between the UT System's employees and officials and Kroll, acting as a "lawyer's representative." Similarly, the UT System argues that documents labeled UTS-00723 through UTS-00726, which it characterizes as "draft communications from UT System General

11

Counsel Dan Sharphorn to interviewees that show Mr. Sharphorn's redline edits," are, despite having been shared with Kroll, protected by the attorney-client privilege because that privilege covers "draft documents and communications shared among persons within the privilege to facilitate the rendition of legal services."

The linchpin of the UT System's claim of the attorney-client privilege with respect to each document listed on the privilege log is its assertion that Kroll acted as a "lawyer's representative"—i.e., one "employed by the lawyer to assist in the rendition of professional legal services," *see* Tex. R. Evid. 503(a)(4)(A)—in connection with its investigation of the admissions practices. In the trial court, the UT System relied on the following facts to demonstrate that Kroll was a "lawyer's representative." First, the UT System presented two affidavits of Daniel Sharphorn, Vice Chancellor and General Counsel for the UT System. Sharphorn averred that in August 2014, while he was the University's General Counsel and acting "under the authority of and at the direction of" the UT System's Chancellor, he hired Kroll[4] to conduct an "independent investigation" into concerns raised about the admissions practices at UT Austin. While the Kroll investigation was focused on individuals internal to the UT System, Sharphorn instructed Kroll to notify him if "anything came to light that raised any serious concern, 'such as evidence of a quid pro quo or a threat from a recommender.'"[5] Sharphorn reviewed "the documents gathered by Kroll in relation to its investigation" to

---

[4] In one of his two affidavits Sharphorn averred that he hired Kroll to conduct the independent investigation. In the other affidavit, Sharphorn averred that UT System Chancellor Francisco Cigarroa hired Kroll. The Agreement was signed on the UT System's behalf by Scott C. Kelley, Executive Vice Chancellor for Business Affairs.

[5] Sharphorn averred that Kroll did not report anything that raised "serious concern."

"evaluate the potential application of federal and state privacy laws."[6]  Although the UT System

argues in its brief that Sharphorn "relied on the Kroll investigation to determine whether anyone

affiliated with UT System or UT Austin engaged in conduct that violated the law or required

disciplinary action," Sharphorn's affidavit contains no such statements.[7]  The UT System also

relies on the following facts stated in the affidavit of Chancellor William H. McRaven.  McRaven

acted as the chief executive officer of the UT System and was responsible for the operation of

the UT System and its member institutions. McRaven averred that his predecessor, Francisco

Cigarroa, authorized Sharphorn to hire Kroll to conduct an "independent investigation into

admissions practices" at UT Austin.  After receiving the Kroll report, McRaven "read [it] several

times" and spoke with Sharphorn, "from whom [he] sought legal advice."  McRaven averred

that:  "After careful review and consideration [] I sent a letter to the Board of Regents rendering

my decision that then-UT Austin President Bill Powers would not be subject to disciplinary

action because Kroll reported that there was no violation of law, rule, or policy, and I, therefore,

determined that his conduct did not rise to the level of willful misconduct or criminal activity."

---

[6]  Sharphorn averred that after conducting his review, he determined that those documents "contain certain personally identifiable student information that is protected from disclosure by the Family Educational Rights and Privacy Act ("FERPA")."

[7]  The paragraph of Sharphorn's affidavit that the UT System cites to support this assertion states that:

> William H. McRaven, who began his service as Chancellor of the UT System in January 2015 ("Chancellor McRaven"), received and reviewed the results of the Kroll Report.  On February 9, 2015, Chancellor McRaven sent a letter to the UT System Board of Regents (the "Board") rendering his decision that then-UT President Bill Powers would not be subject to disciplinary action because Kroll determined that his conduct did not rise to the level of willful misconduct or criminal activity.

The UT System also relies on the affidavit of Ana Vieira Ayala, the UT System's Assistant General Counsel, Legal Expert, and Information Coordinator. Ayala averred that the documents the UT System seeks to withhold all constitute "communications . . . made for the purpose of facilitating the rendition of legal services."[8] The UT System argues that, taken together, this evidence demonstrates that its attorney, Sharphorn, "hired Kroll to conduct an investigation to enable Sharphorn to better advise his clients" and that, consequently, Kroll is a "lawyer's representative" as that term is defined in the Texas Rules of Evidence. *See* Tex. R. Evid. 503(a)(4)(A) (defining "lawyer's representative" as "one employed by the lawyer to assist in the rendition of professional legal services").

The UT System did not present evidence sufficient to meet its burden to show that Kroll was employed by a lawyer, Sharphorn, to "assist in the rendition of professional legal services" by that lawyer to his client, the UT System. *See City of Fort Worth*, 86 S.W.3d at 323 (explaining that it is governmental body's burden to prove that exception to public disclosure applies to information at issue); *City of Houston v. Paxton*, No. 03-15-00093-CV; 2016 WL 767755, at *3 (Tex. App.—Austin Feb. 23, 2016, no pet.) (mem. op.) ("To make a prima facie showing of the applicability of a privilege, a party must produce evidence to support it."); *see also Dallas Morning News*, 22 S.W.3d at 357 (stating that whether exception to disclosure applies to information at issue is question of law). Thus, the UT System failed to produce evidence to support its contention that Kroll was acting as a "lawyer's representative" such that

---

[8] Ayala does not elaborate on the nature of the legal services involved. Many of the documents the UT System seeks to withhold are communications between UT System lawyers and others about matters unrelated to the inquiry into admissions practices, including unrelated litigation. Thus, it is not clear whether the "legal services" referred to in Ayala's affidavit were rendered in connection with the admissions inquiry or with unrelated litigation.

14

communications made to it and information shared with it are protected by Texas Rule of Evidence 503.

The record does not support the UT System's assertion that Kroll was hired to assist in the rendition of any legal services. Rather, undisputed evidence demonstrates that Kroll was hired to conduct an independent investigation and provide recommendations for policy and procedural changes in the context of the UT System's self-imposed mission of ensuring that the admissions process is administered with integrity and fairness. That this was the purpose of the Kroll investigation is reflected both in the Scope of Work itself, which recites that "U.T.'s responsibility to ensure integrity in the handling of admissions recommendations lies with the staff and officials within U.T., thus the charge is to determine if the conduct of U.T. officials is beyond reproach," as well as in the content of the Final Report, which includes recommendations and suggested best practices for improving the UT System's admissions practices. The Final Report includes no legal advice, and the record does not support the UT System's assertion that the investigation was conducted for the purpose of rendering legal services to the UT System. Sharphorn stated in his affidavit that "[b]ased on the results and the recommendations of the admissions investigations and reports, the UT System administration proposed new admissions policy for the Academic Institutions of the University of Texas System." It is undisputed that the Kroll investigation was undertaken to determine facts, practices, and policies relating to admissions. There was no evidence that the UT System was concerned about exposure to legal liability resulting from the admissions practices it retained Kroll to investigate. The fact that Sharphorn or others within the UT System reviewed the Final Report to make separate decisions about whether to take disciplinary action against any officers or employees does not convert Kroll's investigation into one done for the purpose of facilitating the rendition of legal services.

15

The Kroll report was intended to be, and was, made public and there was no evidence presented to support the notion that either the report or the investigation were done in the context of advising the UT System whether any of the facts, practices, or procedures that were discovered would expose the UT System to potential legal liability. There is no evidence that any lawyer's expertise helped define the scope of Kroll's inquiry or which avenues were appropriate to pursue. Instead, the Kroll report states that "[a]though there was some pushback on the scope and extent of requested documentation, all discussions regarding the nature of our requests and documentation were cordial and professional." The investigation was repeatedly referred to by the UT System as an "independent" one. *Cf. Harlandale Indep. Sch. Dist.*, 25 S.W.3d at 334 (excepting from disclosure independent investigation by attorney who was functioning as attorney throughout employment). The only legal advice that the record reflects was rendered by Sharphorn to the UT System in connection with the Kroll investigation was (1) whether information provided to Kroll was protected by the Family Educational Rights and Privacy Act in the context of Vice Chancellor Wallace Hall's request to review the documents provided by the UT System to Kroll, and (2) whether the conduct discovered by Kroll during the course of its investigation would serve as the basis for disciplinary action against then-UT Austin President Bill Powers. *Cf. In re Fairway Methanol LLC*, 515 S.W.3d 480, 485-86 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding) (report of investigative team charged with providing company with business and legal advice with respect to potential termination of employees was privileged because the investigation was also for purpose of assessing potential liability in litigation and defenses to anticipated regulatory proceedings). Because the UT System failed to provide proof that would support that Kroll was employed to assist a UT System attorney in the rendition of legal services, we conclude that the communications in question

16

between Kroll and the UT System are not protected by the attorney-client privilege. Tex. R. Evid. 503(a)(4)(A), (b)(1); *cf. In re Houseman*, 66 S.W.3d 368, 371 (Tex. App.—Beaumont 2001, orig. proceeding) (psychiatrist retained to assess person's mental competency in guardianship proceeding was employed to assist in rendition of professional legal services); *Wright v. State*, 374 S.W.3d 564, 579 (Tex. App.—Houston [14th Dist.] 2012, pet ref'd) (doctor retained by defendant's trial counsel to evaluate defendant's mental state to assist in defense against murder charge was "lawyer's representative").

Because the UT System failed to present evidence that supported it's contention that Kroll acted as a "lawyer's representative," the UT System waived any attorney-client privilege as to the documents labeled UTS-00001 through UTS-00146 and UTS-00723 through UTS-00726 when it voluntarily disclosed those documents to Kroll. *See* Tex. R. Evid. 511(a); *In re XL Specialty Ins.*, 373 S.W.3d at 50. For the same reason, the attorney-client privilege does not cover the interview questions and notes Kroll created when conducting its investigation. *See City of Houston*, 2016 WL 767755, at *1, 4 (holding that City did not meet burden and that trial court did not err in granting summary judgment and ordering certain information related to investigation was subject to disclosure under TPIA); *cf. O'Neill*, 846 S.W.2d at 592 (concluding that investigator was representative of attorney covered by attorney-client privilege).

### *FERPA/Confidential Information*

The Franklin Center also argues that the trial court erred if it relied on either FERPA or another right to privacy to conclude that any information or documents described in the privilege log were excepted from disclosure. *See* Tex. Gov't Code §§ 552.101 (information is excepted from disclosure if it is information considered to be confidential by law, either

17

constitutional, statutory, or by judicial decision); .114 (confidentiality of student records). When providing the Attorney General with the documents listed on the privilege log, the UT System, relying on FERPA, redacted all information it asserted was related to or identified students or applicants. *See* 20 U.S.C. § 1232g.[9] In the letter ruling, the Attorney General stated:

> The United States Department of Education Family Policy Compliance Office (the "DOE") has informed this office FERPA does not permit state and local educational authorities to disclose to this office, without parental or an adult student's consent, unredacted, personally identifiable information contained in education records for the purpose of our review in the open records ruling process under the Act. The DOE has determined FERPA determinations must be made by the educational authority in possession of the educational records.

This Court has previously held that because determinations about disclosure of FERPA-protected information must be made by the institution from whom it is requested, "neither this Court, nor the trial court, nor the Office of the Attorney General of Texas is the proper entity" to interpret FERPA's application to an educational institution's records. *See B.W.B. v. Eanes Indep. Sch. Dist.*, No. 03-16-00710-CV, 2018 WL 454783, at *8 (Tex. App.—Austin Jan. 10, 2018, no pet.) (mem. op.). Not having been provided the withheld student- or applicant-related information, the Attorney General did not review it and did not make any ruling or decision regarding whether it constituted information covered by FERPA or by any other privacy rights. The documents presented to the trial court for in camera inspection were copies of the redacted documents that had been provided to the Attorney General. Thus, the trial court similarly could not have reviewed the student- or applicant-related information and, consequently, could not have made a determination about whether the redacted information constituted information covered by

---

[9] Under FERPA, the term "education records" means records, files, documents, and other materials that contain information directly related to a student and are maintained by an educational agency or institution or by a person acting for such agency or institution. *See* 20 U.S.C. § 1232g(a)(4)(A).

FERPA or other privacy rights. It follows, therefore, that the trial court's order that the UT System could withhold the documents described on the privilege log could not have been based on the nature or content of any of the redacted material included therein. The trial court's order cannot be interpreted as a determination one way or another about whether any documents on the privilege log could be withheld based on FERPA or any constitutional or other right to privacy that may protect the redacted information. Because it is apparent that the trial court did not base its ruling on the applicability of FERPA or any other privacy law, there is no trial court ruling or decision on that issue for this Court to review.[10] Consequently, we do not reach the issue of whether the UT System must provide the Franklin Center with the information it has withheld from disclosure under sections 552.101 or 552.114.[11]

## CONCLUSION

[10] FERPA creates no private right of action. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 390 (2002) (holding that "FERPA's nondisclosure provisions" do not create implied private right of action and do not create enforceable rights under section 1983); *see also B.W.B. v. Eanes Indep. Sch. Dist.*, No. 03-16-00710-CV, 2018 WL 454783, at *8 (Tex. App.—Austin Jan. 10, 2018, no pet.) (mem. op). Accordingly, if the Franklin Center believes that the UT System has not properly complied with FERPA, it may file a complaint with the Department of Education. *See* 20 U.S.C. § 1232g(g) ("The Secretary [of the Department of Education] shall establish or designate an office and review board within the Department for the purpose of investigating, processing, reviewing, and adjudicating violations of this section and complaints which may be filed concerning alleged violations of this section."). But, even if before it, neither this Court, nor the trial court, may be asked to "second-guess" the UT System's FERPA determinations. *B.W.B.*, 2018 WL 454783, at *8.

[11] The UT System also sought to withhold information contained in the documents identified on the privilege log based on its contention that the information was excepted from disclosure by Texas Government Code sections 552.117 and 552.137 and by Texas Health and Safety Code section 81.046. *See* Tex. Gov't Code § 552.117 (confidentiality of certain addresses, telephone numbers, social security numbers, and personal family information), .37 (confidentiality of certain email addresses); Tex. Health & Safety Code § 81.046 (confidentiality of reports, records, and information that relate to suspected cases of diseases or health conditions). The Franklin Center did not challenge the UT System's withholding of information it contends is exempted from disclosure under these statutes.

19

Having determined that Kroll was not a "lawyer's representative" as that term is defined in Texas Rule of Evidence 503, we conclude that none of the documents identified on the UT System's privilege log are covered by the attorney-client privilege set forth in rule 503. *See* Tex. R. Evid. 503. Consequently, the documents identified on the UT System's privilege log are not "made confidential" by "other law" within the meaning of Texas Government Code section 552.022. *See* Tex. Gov't Code § 552.022. We reverse the trial court's summary judgment in favor of the UT System that the documents identified on the privilege log are protected by the attorney-client privilege and not subject to disclosure under the PIA. We do not reach the issue of whether the information redacted from the documents identified on the privilege log is excepted from disclosure under Texas Government Code section 552.101 or 552.114. We render judgment that the documents identified on the UT System's privilege log, as redacted and exclusive of information withheld pursuant to Texas Government Code sections 552.117 and 552.137 and Texas Health and Safety Code section 81.046, are not excepted from disclosure under the PIA and must be disclosed as public information.

_____

Chari L. Kelly, Justice

Before Justices Goodwin, Kelly, and Smith

Reversed and Rendered

Filed: December 22, 2020

20